JUSTICE WHEAT,
dissenting.
¶104 Except as to the Majority’s conclusion regarding the remuneration provisions, I respectfully dissent from the Majority’s decision in this case.
¶105 At the outset, I note that 1-148 was passed by a majority of Montana voters who clearly wanted medical marijuana to be made available for those who need it to treat medical conditions. This was and is the underlying purpose of the law. Shortcomings in the original law subsequently lead to abuses that required the Legislature to step in and impose restrictions to control the abuses. The real question in this case is whether the statutory restrictions went too far and impaired the rights of those who need medical marijuana by severely limiting or eliminating their access to a drug made medicinally legal under the Act. The answer is determined by how one views the underlying purpose of the Act: whether it is to provide “access” to a medicinal drug, or to provide “protection” to those engaged in the business (producers, distributors, and consumers), because marijuana remains federally illegal. So, which analytical lens one uses will determine the outcome. While I recognize a need for regulatory framework, I believe the State has gone too far in this case by creating a law that focuses so heavily on curbing the abuses of medicinal marijuana that it violates the rights of patients by so severely limiting or eliminating access to it, which ultimately destroys the law’s purpose. I disagree with the Majority on nearly every issue brought before this Court. I would affirm the District Court’s decision to enjoin certain provisions of the Act, but I would go further and also enjoin the prohibition of medical marijuana use by probationers and the warrantless search provisions.
¶106 It is noteworthy that the landscape of the law regarding medical and recreational use of marijuana has changed significantly since this case began. Currently, twenty-three states and the District of Columbia have statutes that allow for the legal use of marijuana for medicinal purposes, and four western states have passed laws that allow for legal recreational use of the drug. Opinion, ¶ 13, n.2.1 believe that many more changes are coming in this area of law based on society’s evolving understanding of marijuana, including its medical benefits.
The 25-Patient Certification Limit on Physicians
*295 ¶107 The District Court found that the Board of Medical Examiners reported no problems with medical marijuana certifications throughout the pendency of this action, even though the certification-limit provision was never in effect. The court heard testimony from State officials who testified that no problems exist, and further the State lacked any rationale to justify the limit. Opinion, ¶ 36. The court also determined that the Board possesses the authority to discipline doctors who violate the standard of care, that the Board had already made changes to completely disallow certification “exclusively by telemedicine,” and thus the Board is fully capable of regulating physicians in the State. Opinion, ¶ 36.
¶108 I agree with the District Court’s conclusion that the evidence regarding the ability of the Board to self-regulate and the lack of the State’s rationale to justify a 25-patient limit demonstrates that the provision is unnecessary, and further it is arbitrary. Under rational basis review this provision must be reasonable, not arbitrary, and bear a fair and substantial relation to the object of the legislation. Powder River Cnty., ¶ 79. It is my belief that the object of medical marijuana legislation is to provide legal medicinal access to marijuana. This government regulation reaches beyond a substantial relation to the object of the legislation and instead sets a number so arbitrarily low that the object is stymied. By definition, an arbitrary act is one that is made without consideration or regard for facts, circumstances, fixed rules, or procedures. Black’s Law Dictionary, supra, at 125. This limit fails to consider the fact that the Board already eliminated the telemedicine certification process, which essentially resolved the prior certification problems. This limit fails to consider the circumstance of the Board’s continued authority and ability to properly regulate and discipline doctors for violations of the standard of care in all avenues of medicine. Finally, there is no indication that the Legislature followed any procedure to determine a patient-certification number that would substantially relate to providing regulated access to medicinal marijuana. Instead, the Legislature chose an arbitrary number of 25 that is not reasonable when balanced against the purpose of the legislation. Egdorf, ¶ 19.1 therefore conclude that this provision of the law fails rational basis review and I would affirm the District Court’s injunction of the 25-patient limit on physicians.
Commercial Provisions
¶109 At the outset, I would decline to split the provisions as the Majority did because both types of commercial provisions, not just the remuneration provisions, serve to limit the access of medical marijuana to a distinct class of persons. Opinion, ¶ 47. The remuneration *296 restrictions and the three-patient commercial limit both impose “ ‘peculiar disabilities upon [a] class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to privileges conferred or disabilities imposed.’ ” Kottel, ¶ 55 (quoting Leuthold, 100 Mont. at 105, 47 P.2d at 45). The District Court determined that the effect of these provisions renders access to medical marijuana nearly impossible for people with the most debilitating conditions. I agree with the District Court that the commercial provisions create different classes of persons by imposing different burdens on those who can provide medical marijuana for themselves and those who must purchase it in the marketplace, which then fail rational basis review. I agree with the conclusion the Majority reaches in respect to the remuneration decision. Opinion, ¶¶ 53-56. However, as stated, I would choose to analyze both commercial provisions as one because I believe both restrictions implicate equal protection.
¶110 As written, the statutes create an absurd result where those with the most debilitating medical conditions will have no access to medical marijuana because they will not be able to grow it due to inability, cannot pay someone else to grow it, and will not likely be able to find someone else to do so under the advertising prohibitions. As the Majority notes, this class of persons will likely be forced into the black market to acquire marijuana, creating business for the criminal enterprise the State seeks to avoid under the Act. Opinion, ¶ 54. Here, I agree with the District Court that the statutes fail because as written “[a] statute which is directly contrary to its justification cannot be rationally related to that justification.” Because the commercial provisions fail to protect those persons with the most debilitating conditions, I would likewise enjoin these commercial provisions as they violate equal protection of the laws.
Advertising Ban
¶111 I disagree with the Majority’s application of the Central Hudson test. Opinion, ¶¶ 64-67.1 would apply strict scrutiny because I agree with the District Court’s conclusion that § 341 of the Act “renders the ‘playing field’ for discussion of the pros and cons of medical marijuana completely uneven.” I am not convinced by the Majority’s attempt to limit the language of the Act to a plain-language analysis to establish a commercial-speech basis for allowing the provision. Opinion, ¶¶ 62-63. Instead, I find the language of the statute overbroad and vague. While the Majority reaches a narrow interpretation of the language, I believe it is just as straightforward to come to the opposite conclusion that broad restrictions on political and educational speech have occurred under this law. Article II, section 7 *297 of the Montana Constitution states: “No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty.” Because the language of § 341 creates content-based restrictions as written, it fails an examination under strict scrutiny, which is the standard that should be applied. I would affirm the District Court and enjoin § 341.
Prohibition on Probationer Use
¶112 I would reverse the District Court’s determination that the prohibition on probationer use under § 50-46-307(4), MCA, is constitutional because the State has shown a rational basis for the provision. In my view, the law undermines the purpose of the Act because it clearly bars a class of persons from access to a legally-recognized medicine: medical marijuana. Under the law, all sentences imposed by the district courts include a prohibition on medical marijuana use, which precludes the district court’s ability to apply a case-by-case “nexus” analysis under Ashby. As written, the effect of the prohibition is unconstitutional because the blanket ban violates equal protection of the laws, by classifying persons for different treatment, and it should be analyzed as such. I would enjoin this provision.
Warrantless Searches
¶113 I would reverse the District Court and enjoin the provisions allowing warrantless searches under § 50-46-329, MCA, because these provisions provide carte blanche to State and local law enforcement. I would uphold Montana privacy rights and use this opportunity to strengthen our State’s privacy rights. The inspection procedures under the Act result in a constant threat to potential business owners that law enforcement can enter their premises and gather and develop evidence. I believe this provision will only create hostility and enhance the State’s view of medical marijuana as a criminal endeavor rather than a medicine available to those in need. Ultimately, the search provisions would be better served by providing for warrantless administrative inspections to be carried out only by a State agency with no direct involvement by local or State law enforcement.
Conclusion
¶ 114 I agree with the Majority that the remuneration restrictions do not bear a fair and substantial relation to the object of the legislation, and furthermore the provisions violate the equal protection clause of the Montana Constitution. Opinion, ¶¶ 53-56. I disagree with the Majority on all of the remaining issues in this case and believe the Majority has erred in its interpretation of the statutes. For the reasons stated above, I dissent.